May it please the Court, Peter Hawks from the Angeli Law Group on behalf of Appellant People for the Ethical Treatment of Animals. I'd like to reserve a couple of minutes for rebuttal and I'll try to keep an eye on the time. Thank you. The question presented in this case is stark. Do government officials have a First Amendment right to perform their official duties anonymously so that they may be shielded from public criticism? To ask such a question in a democratic society is to answer it. Clearly not. My remarks today are going to focus on really the three key issues in this case. First, do the member... Can I just ask a preliminary factual question as to what exactly is at issue? Because so far as I could tell, the proposed appointment letters, which, you know, were the core thing that was going to be released in response to the request, are not in the record. So we don't know what they actually look like and what they say, whether they're partially redacted, whether items would be taken out under one of the other many exceptions under the statute. You know, so in particular, home addresses, is that something that, you know, was going to be released in the letter? The letter is just going to be in its entirety with no redactions? Or were there a few little things going to be blacked out? What is exactly at issue here? Well, I think your Honor is correct that that is not in the record, exactly what is going to be released and what isn't. What the University of Washington indicated to the plaintiffs was that it intended to release the appointment letters in the absence of any sort of injunction preventing the university from doing so. Certainly what is being sought here is... But you wouldn't contest if they were to release the letters but redact, say, the home addresses? If there's a basis for such a redaction under the Public Records Act, certainly there's no issue with that. What's at issue here is the release of the names of these persons publicly. Correct, your Honor. What PETA is interested in and the reason that it requested the appointment letters is because it wants to determine the identities of the members of the University of Washington's IACUC committee. And the reasons for that, as we've explained, are because there are federal requirements that members of that committee must be... You must have at least one member who's unaffiliated with the university and you need to have at least one member who is a non-scientist. And because they're serving anonymously, it's impossible for PETA to determine whether the University of Washington is complying with those requirements. That's what this case is really about. The three legal issues that are really at issue here are, first, do the UW IACUC members even have a First Amendment associational right to protect? Second, if they did, have they met the requirements to show a reasonable probability that they would face threats, harassment, or reprisals if their identities became known? And third, does the public interest in disclosure, the governmental interest in disclosure, outweigh any actual burden on plaintiff's First Amendment rights? So let's start with that first question. Whether the UW IACUC members even have a First Amendment right of association to protect here? And talking about the right to association in this context is really trying to fit a square peg in a round hole. This is not a group of people who have gotten together to advocate on issues relating to animal experimentation or animal welfare. These are people who have accepted an invitation to serve on a governing body of a public agency here at the University of Washington. So really talking about it as an associational issue misses the point. What they have agreed to do is to engage in a form of public service and to perform official duties in a public capacity. Counsel, would you address how you think Garcetti bears on this question? Absolutely. Garcetti, it's very clear that when a public official is speaking in their capacity, in their official capacity as a public official, they don't have any First Amendment interest in that speech. And the reason is because it's really the government's speech. It's not their individual speech. They are not speaking, quote, as citizens. They are speaking in their official capacity on behalf of the government. And that ties directly into this case because by serving on the UW IACUC in an official capacity, performing official duties on behalf of a government entity, the members of the UW IACUC are speaking as public officials and, you know, to the extent they are associating, they are associating as public officials. That is the only, that is the very nature of their association, is to serve in this public capacity. And so they simply lack any First Amendment interest in that. The right to association is simply derivative of the right to freedom of speech. If they lack a right to freedom of speech when they are speaking as members of the IACUC, they therefore lack a right of association as well to be a member of the IACUC because, again, it is purely an official position that they hold. And the court, the district court seized on this distinction between public employees and volunteers and seemed to think that that made the difference here. But there really is no, there's no distinction there. Nothing in Garcetti or any of the other cases under the prior Pickering analysis turned on the fact that someone received a paycheck. That's really not what the analysis is. Are they serving in an official capacity or are they speaking or associating as citizens? To establish the relevant exception under the Public Records Act, would they have to show that the release would violate the First Amendment or that it would implicate First Amendment interest? Well, I think they would have to show that it would violate the First Amendment. And the reason for that is if there's to be an exception to the Public Records Act, the default under the PRA is the information gets disclosed. They have to show that there is an applicable exception to that. And the exception would have to be that there is a First Amendment interest that is strong enough that it would actually override the default disclosure requirement. So the exception is not in Washington law, it's the Supremacy Clause. Well, in this case, yes, because we're talking about the First Amendment to the to the U.S. Constitution. It's a little confusing, though, because Washington Supreme Court has recognized as part of the PRA that there's an exception for constitutional rights. So is this something that's being recognized as part of the PRA or is this separate in a constitutional right, as Judge Collins suggests? Is it preempted? In other words, is the First Amendment preempting the PRA or has the Washington Supreme Court recognized the First Amendment as an exception to the PRA? Well, if you look at the Washington Supreme Court cases that have actually addressed the issue, it's it's really a essentially a Supremacy Clause issue. So preemption. So the Washington Supreme Court is recognizing that the PRA is preempted to the extent the First Amendment prevents disclosure. Is that right? Yes, and that's exactly what the Washington Supreme Court has said is that the the Constitution trumps contrary statutory laws. So that's the reason that this exception exists. You know, there's been an argument made that that the quote unquote other statute exemption in the PRA itself encompasses constitutional rights as, quote, under other statutes. That's certainly not the reasoning that the Washington Supreme Court has given in recognizing those constitutional exemptions. And of course, at the end of the day, it doesn't really matter because to qualify for the exemption, whether it's statutory or constitutional, you've still got to show that there is a burden on First Amendment rights here. And and that's where they they simply can't read that rule. But would it be different to say that there was a burden on a First Amendment right versus there could be a difference between saying there's a burden on a First Correct. I'm I'm struggling with the with the distinction that your honor is trying to draw under the focus. They clearly wear two hats. They're on this committee, but they also have academic work that is protected by the First Amendment. And if the statute recognized as an exemption that the disclosure would have the effect of burdening their academic, you know, research, which is First Amendment protected, that would be a different claim from saying that the First Amendment forbids, regardless of what Washington law says, this to be disclosed. Those are not the same theory. And so my my question is, how does this statute work and interact with the First Amendment? Well, I think ultimately those two issues collapse together, because even if you view the the other statute exemption in the PRA itself as encompassing constitutional protections, it certainly doesn't make them any wider than they would exist simply as a matter of constitutional law. If there were no other statute exemption in the PRA, the the exemption for the protection of the First Amendment right of association would be exactly the same, because they're coterminous. If the if the the Constitution is the other statute that we're talking about, then only if there has been shown that there is that it would violate the First Amendment to disclose the information would would that apply? So we ultimately end up in the same place, regardless of whether we view it as under the other statute exemption or simply a direct application of the analysis, that speech of a professor of an academic nature, even though that's part of their duties, their official duties, is protected by the First Amendment, and not like in Garcetti, where speech is part of your your official duties is not protected. I academic and protected under DEMERS. Well, well, that argument simply doesn't fly that they're really the basis for that argument is nothing more than the fact that this IACUC happens to be at a university. But what the law is clear on that the federal law defines exactly what an IACUC can and can't do. And an IACUC is forbidden by federal law to intrude on experimental design, evaluation, anything like that. What an IACUC is charged with doing is enforcing the NIH director guidelines and the Animal Welfare Act regulations under federal law. NIH director guidelines, quote, shall not be construed to prescribe methods of research. Similarly, AWA regs may not relate to the design, outlines, guidelines, performance, or otherwise interrupt actual research or experimentation. So so the interaction with the academic function of the institution is really incidental. Their sole function is to ensure that the research facility is complying with generally applicable animal welfare laws. And to further demonstrate the point, if you have, say, a private pharmaceutical company that accepts federal funds and conducts animal experimentation, they have to have an IACUC. And clearly they are not engaged in any sort of academic function because they're simply a for doing is not part of the academic mission of the institution. As Judge Justice Frankfurter said in Sweezy v. New Hampshire, academic freedom deals with who may teach, what may be taught, how it shall be taught, and who shall be admitted to study. Those are the four academic freedoms. And the IACUC's function simply has nothing to do with that. Do you want to save some time? I will reserve the rest of my time. Thank you, Your Honor. Good morning. May it please the court. Darwin Roberts for the plaintiffs. I don't think it will surprise the panel that I have a number of substantive disagreements with the points just made by counsel. I'm happy to address any of the areas that the court would like me to address. I believe that this is a governing body within the meaning of Washington law. Is that correct? That issue was addressed in the University of Washington's brief. The University of Washington takes the position that due to a consent decree that was signed some time ago, I believe, that this particular IACUC constitutes a governing body. As I believe is also acknowledged in the briefs, PETA has a under Washington state law and the extent to which that affects the governing body status of the IACUC. But I don't think that that is, that the court's decision here need be predicated on that. But did you take a position on that issue in the district court? We did not take a position on that, Your Honor. Did you contest that it counts as a governing body? That issue did not come up in the course of seeking this injunction. Our role under the statute, that is the plaintiff's, whose information is implicated by the release of a record. And 4256540 gives those individuals the legal basis to seek an injunction to prevent the release of records. Why didn't you put the records in the record of the district court so that the court would know exactly what was at issue in the preliminary injunction motion? We've, we're not really disputing what's at issue. The letters themselves are generally similar letters that list the names and certain other identifying information about the individuals. Including home address and email? I do not believe it's the wrong. You may have, Your Honor. If it is, I apologize. But our position certainly would be that if, to the extent the home address was included in any of those appointment letters, we would also be seeking to block the release of that information. Would that be covered by a, you know, an exemption under Washington law? It's possible, Your Honor, that the home address would. But the, we do not believe that there's a specific exemption existing under the Public Records Act that would apply to the names themselves. Now, how, but I, what I have trouble with is how does one have a First Amendment right to serve anonymously on a government body? Well, the, they're not anonymous as to the government. The, the. It was to the public. The, they, this is an entity that's established by federal law. It's required to be established under federal law. Is this, and is a government entity, whether they're employees or volunteers, it, it performs governmental functions under federal law. How can there be a right to serve in a government role anonymously? They're not completely anonymous because the government knows who they are. They must be qualified by the government. And I think the court's question goes to the extent to which the public is allowed to know this information. And our position is. So, so the predicate question of whether or not associational rights are rights of citizens to get together on issues of importance to both of them for their But a government body is when people come together and do the work the government assigns to them under the law to do. I don't see how that, if you sign up for that kind of government work, that that's an associational interest. It's just government work. It is an associational interest, Your Honor, because the constitutional interest in academic freedom and the impairment of that constitutional interest in when harassment, based on the evidence that they've put forth before the court, begins to impair that service. I mean, there are a number of instances in which Excuse me. So you're saying this is the fortuity that the, the IACUC is at a university? The opposing counsel says, well, a pharmaceutical company would have one also, so they wouldn't have any First Amendment interest in anonymity? No, but they also wouldn't have the Public Records Act requiring the release of their names. It would be up to the pharmaceutical company and the federal regulators to, to judge whether that was okay. And I want to be clear, the federal regulators in this case approve the anonymous service of the IACUC members. They, you know, the Department of Health and Human Services is well aware that this is what they're doing, and they approve it. So it wouldn't be subject to a FOIA request? Same thing. It would also be protected under FOIA, is our opinion. By the statute or by the First Amendment? Either. I don't think the issue has actually been litigated federally, but, but in, in our view, it would be protected under both federally. Well, once you answer the question I asked counsel about how this intersects with the Public Records Act, is it that the First Amendment overrides it and says you may not do it? Or does the statute incorporate within it some accommodation of First Amendment interest that might not rise to the level of a First Amendment violation? Oh, the latter, Your Honor. Absolutely. What's the support for that? Well, the support is that the state addresses this very clearly in the state's brief at pages 10 to 12. That the, look. What case says that? That's the, the, the Seattle Times case, the Freedom Foundation v. Gregoire case. Coserco doesn't seem to, to get you there. I mean, Coserco says, you know, that it can be a basis under the PRA for withholding records alleged to violate the respondent's fair trial rights. That seems to suggest that it has to be the level of a constitutional violation. And the others, if this is fit into other statute, it would just seem to say that the other statute, the Constitution, forbids it so that it has to be a constitutional violation. I think the difference there is that that case is not trying to describe the floor for a constitutional interest. It's saying something is sufficient, but not that it's necessary. All right? And the, we want to be very clear here. We are not asking to invalidate the PRA. The PRA is a decision by the state of Washington that certain records, or, you know, public records generally, are subject to disclosure unless they fall within an exemption. Not an exception, an exemption. It's even like the Gregoire case that you're citing on page 10 of the state's brief. It says the other statute exception is broad enough to exempt from disclosure information that is protected under the federal state constitutions. And then the quoted language from Gregoire is the state constitution supersedes contrary statutory laws, which makes it sound like it's supremacy clause again. So that, because we have to find a First Amendment violation in order to, you know, provide any relief. We get back to the question of do you have a First Amendment right to serve anonymously on a government body? I think the academic freedom interest is established by Demers. And if you look at, and I know these issues were all discussed in great detail in the briefing, but the academic interests found to be protectable in Demers were more administrative and less related to scholarship and teaching than the academic interests here. And I would point out that contrary to counsel's representation about the limits of what an IACUC is allowed to do, that's a legal argument that was made mainly on reply that is not consistent with the record in this case. The plaintiffs submitted the declaration of Susan Silk, who was the former director of the Division of Policy and Education of the Office of Laboratory Animal Welfare. This is at ER 17, who said that the purpose of the IACUC is to review concerns regarding the care and use of animals, make recommendations to the institutional official for improving the program, review and improve initial and renewal proposals, and suspend activities of animals not in accordance. The dialogue that's going on there between the IACUC members and the individuals conducting the scientific research is exactly the point here. That is the academic freedom interest. They are talking to the researchers and discussing the ways of designing experiments so that they can treat animals, research animals, as humanely as possible. That's why it becomes a First Amendment academic interest, not just a bureaucratic sort of rubber stamp process as PETA incorrectly suggests. I guess I still don't see why that function wouldn't be the same, if not at a pharmaceutical company at some other state agency that has a use of animals, the IACUC would be doing the same thing. So are you saying they would also, that this function of the IACUC is inherently academic, as opposed to just the fortuity of it being the University of Washington? Help me understand that. I'd respectfully disagree with the use of the word fortuity. I mean, it's the presence of the IACUC at the institution that gives it this academic importance, yes. So an IACUC at a different institution that wasn't a university that was still subject to a PRA request would not be able to claim such a right? I think it would depend what the animal activity itself was. But I don't think it's necessary for the court to engage in that hypothetical in order to decide that the academic interests that have been demonstrated here and are consistent with Demers can be protected. But if what this government entity is doing, pursuant to the statute and the regulations, is not academic, it's either academic or it's not, if it's the same thing, unless there's something different about the way it operates at a university. So Demers was pretty specific. Professors teaching this is not, doesn't seem analogous. So I'm trying to understand whether your argument is that the function is inherently academic. Well, I'd also quote Sweezy v. New Hampshire, which is in the Demers line of cases, which says teachers and students must always remain free to inquire, to study, and to evaluate, to gain new maturity and understanding, otherwise our civilization will stagnate and die. So is your answer yes, that what the IACUC is doing is inherently academic? Yes. Okay. Yeah, in this context, absolutely. And I think the district court appropriately found that in evaluating the facts put forth by plaintiffs. And it would be inherently academic regardless of the institution at which this function was taking place? I don't think that's necessary for the court to do. Because there's researchers. I mean, they're doing the same thing and they're giving advice to researchers, so why not? That also goes to what the actual inquiry is here, and the actual inquiry is in part balancing this academic interest, if the court finds it's established, against any countervailing interest. Now, in this case, the balancing is taking place because of the preliminary injunction. And the preliminary injunction is necessary to preserve the status quo while the court actually considers this issue. As the record is very clear, the University of Washington said, unless we get a court order, we are releasing these records. And it's important for the court to understand, too, I think, how the Public Records Act operates in practice. The agencies of the State of Washington are subject to penalties and attorney's fees if they resist disclosure, even if they have a good-faith argument against disclosure, even if the University of Washington and the Attorney General's Office might think that this falls under the First Amendment and is protected for that reason. If they resist disclosure on that basis and a court finds that that argument is incorrect, they typically will be fined and subject to attorney's fees for that. So the state agencies do not do that. The only way for the courts to explore these issues and what the First Amendment does and doesn't allow on a fully elaborated factual record is for a third party, like the plaintiffs here, to bring a lawsuit and say, no, in fact, our academic interests are implicated by this. And third parties can do that because they are not subject to the statutory penalties and attorney's fees provisions of 4256.550. The only way these issues will be explored and adjudicated is if the court allows the preliminary injunction to preserve the status quo and preserve the records as undisclosed while the court considers the facts underlying these issues. And I know the briefing focused a lot on the standard of review. I would submit to the court, even if the court were to review this de novo, I think we should prevail. I think the district court correctly balanced the facts and made appropriate factual findings and reached the correct legal conclusion. But I strongly disagree with counsel's arguments about the standard of review. I don't think the Edge case or the San Antonio hospital case or any of those truly establish that there's a do-over before the circuit court upon an interlocutory appeal of a preliminary injunction. And the case I would cite for that in particular is Preet v. Bradbury. If you look at that, it draws a distinction, a clear distinction, between possible facts of constitutional dimension, which essentially are legal conclusions, and the underlying facts cited by the district court. And I can give you a page site on that. It's 438F3rd at 960. Can I just ask one factual question going back to something I asked earlier? I understand from your earlier response that the reference in paragraph 32 of the complaint to the fact that the appointment letters have physical addresses, that means office addresses. Yes, Your Honor. Okay. Because all PETA is trying to find out in this case is who these people are. And once they have found out their identities, everything else flows from that. They or people who are sympathetic to their aims will use that information to discover additional information, like the issue of the names of people's pets that was touched on in the record and so forth. Once the information is out the door, the relative protection that comes from the very limited anonymity that's afforded to them. And again, I think it's important to pay attention to how the district court balanced this. PETA's free expression is not being inhibited here. The only First Amendment interest that's implicated here is the First Amendment interest in the academic freedom of plaintiffs. PETA has a statutory cause of action under the Public Records Act that it asserts allows the disclosure of these records if they're not exempt. You're over time. Please wrap up. Unless there are any further questions from the court, I would just ask that the court dismiss the interlocutory appeal, allow the preliminary injunction to remain in place while the district court further considers these issues. And that on an entirely completed record, the court can then review the issues of the academic freedom constitutional right. Thank you. Thanks. And Mr. Hawks, I think you have a little time left. Thank you, Your Honor. I'd like to return to the academic freedom issue, which seems to be where most of the action is here. One thing that counsel said was that the interest in academic freedom was stronger here than in Demers, which is surprising to me because Demers involved a letter written by a professor where he was arguing for, here's how we should structure our faculty. Here's the type of people that we should hire. I mean, that's squarely within the scope of who may teach, what may be taught, how it shall be taught. I mean, that's bread and butter academic freedom. We don't have anything like that here. As the court correctly noted, what we have are people who are performing a function that would be performed anywhere the animal experimentation is being done, whether it's an academic environment or not. And while there is some interaction with people who may be engaged in academic research, that's not enough to make it that the cloak of academic freedom flow down over it. And for that, I would point you to the Brown versus Trustees of Boston University case that we cited in our brief, which involved the application of anti-discrimination laws to the hiring of faculty and staff at Boston University. And the school argued, no, who we hire as our faculty is the core of academic freedom. And the court said, well, no, what we're talking about here is the application of generally applicable laws. We're not talking about deciding who's going to be hired on your faculty on academic grounds. The law simply says that you can't discriminate based on unlawful categories. And that's exactly what we have here, Your Honor, is we have generally applicable laws that would apply to anyone who's doing animal experimentation. And again, the only interaction with the fact, the only relation to academic freedom is that it happens to be at a university as opposed to some other type of facility. So with that, we'd urge the court to reverse. Thank you. Okay, we thank both sides for their argument in this interesting case. The case of Sullivan versus People for the Ethical Treatment of Animals is submitted. And we're adjourned for this morning session. All rise.
judges: IKUTA, COLLINS, Fitzwater